# McMillan *v.* Otis.

### *Action for Rent, by Assignee of Lease.*

1. *Assignment of lease; variance.*—In an action for rent reserved by a written lease, a sole plaintiff suing as the assignee, a recovery can not be had on proof of an assignment to a partnership of which he is a member.

2. *Mortgagee's right to possession, or use and occupation.*—A mortgagee, or trustee in a deed in the nature of a mortgage, is entitled to the immediate possession, and may maintain an action for use and occupation against the tenant in possession, unless the mortgage contains some stipulation, express or implied, postponing his right to take possession; but, where the mortgage contains an express stipulation, that it shall be void, if the secured notes are paid at maturity, and that if the mortgagor "shall fail to pay said notes at their maturity, then it shall be lawful for

the said M. [mortgagee] to take possession of said lands," his right to take possession is, by clear implication, deferred until the maturity of the notes.

· APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. E. CLARKE.

This action was brought by McMillan & Sons, a partnership suing in their firm name, against William Otis, to recover the sum of $1,708.30, the rent reserved by a written lease executed by and between J. F. Jewett, as lessor, and said William Otis as lessee, and alleged to be payable, in quarterly installments, between the 1st of June, 1876, and the 1st December, 1877. The action was commenced on the 22d December, 1877. The original lease from Jewett to Otis was dated May 20th, 1859, and was for the term of one year, to commence on June 1st, 1859 ; but it contained an express stipulation that Otis should have "the privilege of renting said land, mill and improvements, from year to year afterwards, for the space of ten years, at the annual rent of one thousand dollars, payable in quarterly installments as above ;" and it was renewed on the 1st June, 1860, for the term of ten years, and again on the 4th March, 1870, for an additional term of ten years ; each of these renewals being evidenced by writing indorsed on the back, to which the signatures and seals of both parties were affixed. On the 16th March, 1876, Jewett assigned and transferred the lease, by indorsement under his hand and seal, to E. C. Lyles, who, on the 29th May following, by writing indorsed on it, re-assigned and transferred his interest back to Jewett ; and on the same day, May 29th, 1876, by written indorsement, for value received, Jewett transferred all his "right, title and interest in said within lease to M. M. McMillan & Sons," plaintiffs.

On the 12th March, 1872, while Otis was in possession of the premises under the second renewal of his lease, Jewett conveyed the premises by deed of trust to Henry Bernstein, to secure a debt due to Mrs. Caroline Schonfield ; and default having been made in the payment of the secured debt, Bernstein sold the property, on April 16th, 1874, under a power contained in the deed, and made a conveyance to S. Vogel as the purchaser. On the 1st May, 1874, Vogel and wife, by quit-claim deed, conveyed the property to said Otis, on the recited consideration of $5,340 in hand paid ; and on the 16th March, 1876, Jewett, having redeemed from Otis, received from him and his wife a quit-claim deed for the premises. On the same day, March 16th, 1876, Jewett conveyed the property, by quit-claim deed, to E. C. Lyles, from whom he had obtained the money to make the redemption ; and Lyles, on the 15th April, executed to Otis a lease, or agreement for a lease, in

36

these words : "I agree to lease the property to William Otis, for ten years, for $850 a year, payable quarterly ; said Otis to repair the wharf, and keep it in repair during the continuance of the lease, free of expense to me. If J. F. Jewett redeems before 16th March, 1877, then this agreement to be null and void, and of no effect; and if said Jewett does redeem before 16th March, 1877, then said Otis is to be paid for any improvements and repairs on the wharf. William Otis has a right and permission to purchase the property, at any time within three years, for $6,500, provided J. F. Jewett does not redeem or purchase before 16th March, 1877." On the 20th May, 1876, Lyles and wife, by quit-claim deed, conveyed the property back to Jewett, who had borrowed the money to pay for it from McMillan & Sons, or had procured it on their negotiable promissory notes payable in bank; and to secure the payment of these several notes, which were all dated May 24th, 1876, and payable nine, twelve, fifteen, and eighteen months after date, Jewett conveyed the property, by deed of trust in the nature of a mortgage, to M. M. McMillan, one of the partners of the said firm. This mortgage, or deed of trust, was dated May 24th, 1876, and after reciting said indebtedness, and describing the notes, was conditioned as follows: "Now, if the said J. F. Jewett, his heirs or assigns, shall well and truly pay, or cause to be paid, to said M. M. McMillan the amount of their said notes at maturity, then this deed shall be void, and of no further effect; but, if the said Jewett shall fail to pay to said M. M. McMillan, or his assignee or agent, the amount of the said notes at their maturity, then it shall be lawful for the said M. M. McMillan to take possession of the above described lands and improvements," and sell them after giving notice as prescribed.

The defendant denied his liability to pay the rent sued for, on the ground that the lease became merged in the fee when he obtained a conveyance from Vogel, the purchaser at the sale made by Bernstein as trustee; and this defense was sustained by this court on the former appeal, STONE, J., dissenting. *Otis v. McMillan & Sons*, 70 Ala. 46–62. On the second trial, as the record now shows, the defendant pleaded the general issue, and several pleas which set up the defense of merger in various forms; and issue was joined on these several pleas, after demurrers to the special pleas had been overruled. By leave of the court, and against the objection of the defendant, a count for use and occupation was added to the complaint; and to this count the general issue and the statute of limitations were pleaded, and several special pleas, to which several replications were filed. The opinion of this court renders it unnecessary to state the pleadings at length.

On·the trial, as the bill of exceptions shows, the· plaintiffs read in evidence the several conveyances above mentioned, except the deed of trust to McMillan, and then offered in evidence the written lease executed by Jewett to the defendant, "with each indorsement thereon, and assignment thereof; to which the defendant objected, and the court sustained the objection; and plaintiffs thereupon excepted. Plaintiffs then introduced said J. F. Jewett as a witness, who testified, that he owned the said premises at the time he executed the deed to Bernstein as trustee, and the defendant was in possession as his tenant; that he redeemed the premises within two years after the sale by Bernstein, to-wit, on the 16th March, 1876; that he borrowed the money from E. C. Lyles to make such redemption, and paid the same to defendant, said Otis, who had purchased from Vogel; that he afterwards borrowed the money from plaintiffs to repay Lyles, and·gave a trust-deed to M. M. McMillan to secure the repayment of the money so borrowed." The plaintiffs then offered said deed to McMillan in evidence; to which the defendant objected, "because it was a deed to McMillan alone, and not to plaintiffs; which objection the court sustained," and plaintiffs excepted. "Plaintiffs then moved to amend, by striking out the firm name of McMillan & Sons, and allowing the case to stand in the individual name of said M. M. McMillan as sole plaintiff;" and this amendment being allowed by the court, the deed to said McMillan was admitted in evidence without objection.

"Said Jewett testified, also, that when. he conveyed the premises to said McMillan the defendant was still in possession; that defendant wrote him a note, dated September, 1876, asking when McMillan would be in town, as he wanted to surrender the premises, and did abandon the premises in the latter part of September, 1876, before the law-day of said deed to McMillan, leaving thereon two sticks of live-oak timber, which he removed, at the instance of witness, in June, 1880; that the property was vacant after defendant left it, until June, 1880, when witness took possession of it as the agent of McMillan; that defendant paid no rent to either him or McMillan after the 16th March, 1876, when witness redeemed from him, and always denied his liability for the same. Plaintiff then offered to prove the rental value of the premises at the time said trust-deed was made to him, and up to September 1, 1876; but defendant objected to any proof as to rents between the date and the law-day of said deed, to-wit, between May 24th, 1876, and October 24th, 1877; which objection the court sustained, and plaintiff excepted. Said witness testified, also, that the rental value of the premises, from December, 1877,. to June, 1880, was $1,000 per annum. Plaintiff then offered to prove that,

[McMillan v. Otis.]

at the time defendant entered upon the premises, he did so under the written lease above referred to, and held the premises under said lease as long as he remained in possession thereof. The defendant objected to this parol testimony, and the court sustained the objection; to which the plaintiff excepted. The plaintiff offered no further testimony, and the defendant offered none. The court charged the jury, on the request of the defendant in writing, that they must find for the defendant, if they believed the evidence; to which charge the plaintiff excepted."

The charge given by the court, the rulings on the evidence to which exceptions were reserved, and the several adverse rulings on the pleadings, are now assigned as error.

G. B. & F. B. CLARK, Jr., and H. AUSTILL, for appellant, contended that there was no merger of the lease in the estate acquired by Otis under his deed from Vogel, because of the outstanding statutory right of redemption in Jewett; and that the agreement to accept a new lease was not an extinguishment of the former lease, because it was made conditional on Jewett's failure to redeem. On this point they cited 1 Washburn's Real Property, pp. 52, 62, 65, §§ 76–93; Cooley's Bla. 109, note 9; Bacon's Abr. 102; *Cook v. Parham & Blunt*, 63 Ala. 456; *Southworth v. Scofield*, 51 N. Y. 513; *Humes v. Scruggs*, 64 Ala. 50; Chitty on Contracts, 461. As to the right to recover under the count for use and occupation, they cited *Crommelin v. Theiss*, 31 Ala. 412; *Marx v. Marx*, 51 Ala. 222; *Watford v. Oates*, 57 Ala. 295; *Woodward v. Parsons*, 59 Ala. 625; *Toomer v. Randolph*, 60 Ala. 356.

G. Y. OVERALL, and L. H. FAITH, *contra*, cited, on the question of merger, *Clift v. White*, 15 Barbour, 9; *Reed v. Lotson*, 15 Barbour, 70; *Wilcox v. Davis*, 4 Minn. 197; 2 Ired. N. C. 301; 17 Iowa, 463; 1st Jones on Mortgages, 888. That the deed to McMillan was not admissible as evidence before the amendment of the complaint, they cited *Wharton v. King*, 69 Ala. 365; *Coal Mining Co. v. Brainard*, 35 Ala. 476; *Strickland v. Burns*, 14 Ala. 511; *Ulrick v. Rágan*, 11 Ala. 529. That a recovery could not be had for use and occupation before the law-day of the deed to McMillan.—*Hall v. Railway Co.*, 58 Ala. 10; *Scott v. Ware*, 64 Ala. 174.

SOMERVILLE, J.—This case, when last before this court, on appeal, was under the title of *Otis v. McMillan & Sons*, 70 Ala. 46. The facts are fully stated in the report of the case, and it is unnecessary that they should be again repeated in detail for any purpose of this decision. We are urged by appel-

lant's counsel to review the doctrine announced in that case, which was decided by a divided court. This is unnecessary, in as much as it is our judgment that the general charge given by the court below, in favor of the defendant, was correct on other and different principles.

If we concede that there was no *merger,* or extinguishment, of the lease made by Jewett to the defendant, Otis, but that it still continued in full force and effect as a lease, with its attendant relationship of landlord and tenant, the evidence shows that this lease was assigned to McMillan & *Sons,* and not to the plaintiff, M. M. McMillan, alone. The former, in their partnership capacity, were, therefore, the legal owners of the lease, and not the plaintiff. The plaintiff was not the sole landlord of the defendant, entitled as such to the accrued rents, for which the present action is brought; but such rents, if recoverable at all on the strength of the assigned lease, could be sued for only in the name of McMillan & Sons. The variance, therefore, between the *allegata* and *probata,* was fatal to any recovery based on rights derived from the assignment of the written lease.

It is insisted, however, that the plaintiff was entitled to recover for *use and occupation,* because he was the trustee of a deed of trust, in the nature of a mortgage, executed to him by Jewett, in May, 1876, conveying to him the premises in the occupancy of the defendant. This would undoubtedly be true, if the law-day of the mortgage, or trust-deed, had arrived, and the plaintiff, as mortgagee or trustee, was *entitled to possession* during the time when the defendant was in possession and the rents accrued, and, being so entitled, he was active in making claim to the rents, by giving notice to the defendant, as tenant in possession.—*Johnston & Stewart v. Riddle,* 70 Ala. 219; *Marx v. Marx,* 51 Ala. 222; *Knox v. Easton,* 38 Ala. 345.

The rule as to mortgages, in this State, is settled to be, that such a conveyance confers on the mortgagee a title under which he may take immediate possesssion, *unless there be some stipulation or agreement in the mortgage, express or implied,* postponing the mortgagee's right to take possession until default, or the law-day of the instrument, as it is commonly designated. The decisions are uniform, and without conflict, on this point.— *Watford v. Oates,* 57 Ala. 290; *Woodward v. Parsons,* 59 Ala. 625; *Hutchinson v. Dearing,* 20 Ala. 798; *Toomer v. Randolph,* 60 Ala. 356; *Duval v. McLoskey,* 1 Ala. 708; *Knox v. Easton,* 38 Ala. 345.

It is clear to our mind, that the language of the mortgage in question, by clear implication, defers the right of the mortgagee to take possession until the maturity of the mortgage-debt,

and that before this day of default he was not entitled to claim the rents.

. Affirmed.